# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Freedom Development Group LLC – 87ᵗʰ Street | ) | |
| | ) | |
| Debtor. | ) | Bankruptcy No 20-15619 |
| | ) | |
| _____ | ) | |
| | ) | |
| Karen R Goodman, not individually but as Chapter 7 trustee for Freedom Development Group LLC – 87ᵗʰ Street, | ) | Honorable Judge Donald R. Cassling |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 21-***** |
| | ) | |
| | ) | |
| John Thomas, Daniel Olswang, Freedom Development Group LLC, Freedom Development Group LLC – Aurora, Freedom Development Group LLC – Elgin Hospital, Freedom Development Group LLC – North Avenue, Freedom Development Group LLC – Pittsfield, Freedom Development Group LLC – Round Lake, Freedom Development Group LLC – Starved Rock Marina, Freedom Development Group, LLC – Waukegan, 901 Center Street Holdings, JET Foods LLC, and John Does with bank account numbers ending in 0253, 0262, 0280, 0412, 8781, 9332, 1473, and all other dummy or sham corporations created or used by, or for the benefit of the Individual Defendants | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

1

## COMPLAINT

Karen R. Goodman ("Plaintiff" and/or "Trustee"), not individually, but as Chapter 7 Trustee for the estate of Freedom Development Group LLC – 87th Street  ("Debtor"), brings this adversary proceeding against individuals John Thomas ("Thomas"), Daniel Olswang ("Olswang"), (collectively, "Individual Defendants"); and Freedom Development Group LLC, Freedom Development Group LLC – Aurora, Freedom Development Group LLC – Elgin Hospital, Freedom Development Group LLC – North Avenue, Freedom Development Group LLC – Pittsfield, Freedom Development Group LLC – Round Lake, Freedom Development Group LLC – Starved Rock Marina, Freedom Development Group LLC – Waukegan, (collectively, "Related Entities"), and 901 Center Street Holdings, JET Foods LLC, John Does with bank account numbers ending in 0253, 0262, 0280, 0412, 8781, 9332, 1473, and all other dummy or sham corporations created or used by, or for the benefit of the Individual Defendants (collectively, "Principal Entities"); seeking an accounting and the recovery of damages caused by the conversion of the Debtor's assets, breach of fiduciary duty, embezzlement or in the alternative larceny pursuant to 720 ILCS 5/16-1, avoidance of actual and constructive fraudulent transfers pursuant to 11 U.S.C. §§ 105, 363, 544, 548, 549, 550, Sections 160/5(a)(1) and 160/8 of the Illinois Uniform Fraudulent Transfers, and Fed. R. Bankr. P. 7001(1), finding that the Related Entities and Principal Entities are the alter egos of the Debtor and mere instrumentalities of the Individual Defendants which requires the corporate veil to be pierced, and a permanent injunction against all Defendants from transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any assets, and alleges as follows;

## JURISDICTION AND VENUE

1.      This adversary proceeding arises in the Chapter 7 case of Freedom Development
Group LLC – 87th Street, pending before this Court as case number 20-15619.

2.      Pursuant to 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over
this proceeding, as referred pursuant to 28 U.S.C. § 157(b) and Local Rule 40.3.1(a) of the
United States District Court for the Northern District of Illinois.

3.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (E), (F), (H), and this
Court has constitutional authority to enter final judgments and orders herein.  If a court
determines that any portion of this proceeding is not a core proceeding or that a bankruptcy judge
does not have constitutional authority to enter final judgments in this proceeding, the Trustee
consents, pursuant to 28 U.S.C. § 157(c), to a bankruptcy judge hearing and finally determining
the proceeding and entering appropriate orders and judgments.

4.      This Court is the proper venue for this adversary proceeding pursuant to 28
U.S.C. §§ 1408 and 1409.

## GENERAL ALLEGATIONS

5.      Debtor is an Illinois limited liability company which was in the business of
leasing and operating a business plaza located at 163-205 W. 87th Street, Chicago Illinois
("Property").

6.      On August 14, 2020 ("Petition Date"), the Debtor commenced the above-
captioned bankruptcy case by filing a voluntary petition seeking relief under Subchapter V of
Chapter 11 of the Bankruptcy Code.

7.      The Debtor identified in its schedules Prescient Capital Partners ("Prescient") as its largest secured creditor with a claim of $4,300,00.00 and Silver Development Co. ("Silver") as its largest unsecured creditor with a claim of $466,560.00.

8.      The Debtor's sole asset is a leasehold in the Property.  Silver is the holder of a fee title in the Property and Debtor's leasehold interest is created by that certain Ground Lease dated May 2005, between Debtor and Silver.

9.      Defendant, Freedom Development Group LLC, is the master LLC to the Debtor ("Master LLC"), and at least seven other subsidiary companies including (A) Freedom Development Group, LLC – Aurora, (B) Freedom Development Group, LLC – Elgin Hospital, (C) Freedom Development Group – North Avenue, (D) Freedom Development Group – Pittsfield, (E) Freedom Development Group LLC – Round Lake, (F) Freedom Development Group LLC - Starved Rock Marina, (G) Freedom Development Group, LLC – Waukegan.  All of the Related Entities have the same principal office, located at 910 W. Van Buren, Suite 500, Chicago Illinois.

10.      The Individual Defendants, Olswang and Thomas are officers of the Debtor. Olswang is a one-third member and CEO of the Debtor.  Olswang is also the registered agent of all the Related Entities.  Thomas is a two-thirds member and president of the Debtor.  On information and belief, Thomas and Olswang also own, manage, and control other entities, including a vacant hospital campus in Elgin, Illinois under the name of 901 Center Street Holdings LLC and several grocery stores in the Chicago area under the name of JET Foods LLC. All of the Principals' Entities have the same principal office, located at 910 W. Van Buren, Suite 500, Chicago, Illinois.

4

11.      At all relevant times the Related Entities, Principal Entities, and Individual Defendants were alter egos of the Debtor.

12.      On September 1, 2020, the Court granted Debtor's first motion to use cash collateral ("First Order"). (Dkt. No 29.) Under the terms of the First Order, Debtor was allowed to use cash collateral, consisting of rent collections, to pay only expenses identified in the budget attached to the Debtor's motion. The First Order's budget showed a gross projected revenue of $147,198.25.  (Ex. A).

13.      On September 30, 2020, the Court, entered a second cash collateral order pursuant to the Debtor's second motion to use cash collateral, ("Second Order"). (Dkt.  No. 47.)  Under the terms of the Second Order, the Debtor was allowed to use cash collateral to pay only expenses identified in the budget attached to Debtor's motion. As with the First Order the budget projected gross revenue of $147,198.25. (Ex. B).

14.      On October 27, 2020, the Court granted the U.S. Trustee's Motion to Convert or Dismiss and converted this case to a Chapter 7 proceeding.  On or about that date the Trustee was appointed. (Dkt. No. 72.)

15.      On November 12, 2020, Debtor filed its Statement of Financial Affairs ("SOFA"). (Dkt. No. 78). Debtor's SOFA showed a substantial amount of money transferred to the Individual Defendants within one year prior to the filing of the bankruptcy case.

16.      The meeting of creditors pursuant to Section 341 of the Bankruptcy Code took place on December 16, 2020.  During the meeting of creditors, the Debtor's representative, Olswang, stated that instead of paying expenses identified in the budget of the First and Second Orders, they were instead, "trying to keep our other projects going."

17.     Based on Olswang's testimony, the bankruptcy schedules and SOFA, the Trustee filed an Initial Report of Assets. (Dkt. No. 93).

18.     On December 22, 2020, the Court granted Prescient and Silver's Joint Motion for Relief from Stay. (Dkt. No. 98.) In the motion, Silver claimed that Debtor failed to pay post-petition September 2020 rent budgeted in both the First and Second Orders.  Prescient also alleged the Debtor failed to pay the required October adequate protection payment outlined in the Second Order.

19.      The Individual Defendants authorized the Debtor's funds to be transferred to pay obligations of other entities they owned and/or controlled and not the expenses outlined in the First and Second Orders.

20.     On January 12, 2021, the Trustee sought and was granted authority to take examinations of the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. (Dkt. No. 100). Thereafter, on January 26, 2021, the Trustee sought and was granted authority to extend the scope of the examinations to the Individual Defendants. (Dkt. No. 105).

21.     On June 10, 2021, and June 22, 2021, the Trustee's counsel examined Olswang and Thomas.  The Individual Defendants invoked their rights under the Fifth Amendment to the United States Constitution to each and every question asked.

22.     Rather than cause the Debtor to pay any portion of the budgets authorized in the First and Second Orders, the Individual Defendants, and possibly with the assistance of accountants, implemented a scheme seeking to make the Debtor's assets unavailable to collection efforts by its creditors.  The premise of the scheme was to strip the Debtor of its assets and transfer them to the Debtor's Related Entities and the Principals' Entities.  As a result of this

scheme, and the actions of the Individual Defendants, the Debtor was left with substantial debts to creditors and deprived of any assets to satisfy those claims.

23.     The Trustee, through discovery, has received documents including bank statements, cancelled checks, the balance sheet, and the ledger indicating that before and after the Petition Date, funds of the Debtor were used to pay expenses of the Related Entities and the Principal Entities.

24.     As stated below the Debtor held at least three bank accounts in its name during the relevant time thereof;

| BANK | LAST FOUR DIGITS OF ACCOUNT |
|---|---|
| Fifth Third Bank | 0058 |
| Grand Ridge National Bank | 8892 |
| Belmont Bank and Trust | 9530 |

25.     The Debtor's first primary account during the relevant time thereof, was the Fifth Third Bank account with an account number ending in 0058.  Within two years prior to the Petition Date, that account reflected deposits in the estimated amount of $2,931,555.25 and withdrawals of $2,727,898.15.  Deposited funds were transferred out of the Debtor's account virtually instantaneously after the deposit and the account always severely undercapitalized.  Of the $2,727,898.15 in withdrawals, at least approximately $2,000,000.00 were direct transfers to account numbers corresponding to accounts maintained by the Related Entities and the Principals' Entities.

26.     As seen through the Debtor's bank statements an identical pattern of activity occurred with the Debtor's two other subsequent bank accounts during the 2019- 2021 period including its Grand Ridge National Bank account number ending in 8892 and Belmont Bank & Trust account number, 9530.

27.     Additionally, there were significant transfers made regularly to certain unknown account numbers, wires, and checks for which the Trustee has no statements or information to account for.  On information and belief, those unknown accounts, specifically bank accounts with digits ending in 0253, 0262, 0280, 0412, 8781, 9332, and 1473, were/are maintained by the Related Entities or the Principal Entities.

28.     Thomas and Olswang pre-petition and post-petition fraudulently transferred an estimated $2.8 million from the accounts of the Debtor to themselves, the Related Entities, and the Principal Entities.  The Individual Defendants used the Debtor as a "cash cow" for purposes of supporting the Related Entities and the Principal Entities.

## COUNT I - ACCOUNTING

29.     The Trustee incorporates the allegations of paragraphs 1 – 28 above as fully set out herein.

30.     Under Section 363(c)(2) of the United States Bankruptcy Code, a debtor and its principals are absolutely prohibited from spending cash collateral without the consent of all parties that have an interest in the collateral, or a court order.

31.     The Individual Defendants without consent, used the funds collected and deposited post-petition and earmarked to be used for the Debtor's expenses under the First and

Second Orders for their own benefit, and to pay obligations of the Related Entities and the

Principal Entities.

32.     The funds were used by the Individual Defendants to pay for the Related Entities

and Principal Entities have not been accounted for or turned over to the Trustee.

WHEREFORE, the Trustee requests that this Court enter judgment in her favor and

against the Individual Defendants, requiring the Individual Defendants to provide a complete

accounting of the money transferred from the Debtor to themselves, the Related Entities,

Principal Entities, or any other parties.

## COUNT II – CONVERSION BY THOMAS

33.     The Trustee incorporates the allegations of paragraphs 1 through 32 above as fully

set out herein.

34.     Thomas acted with specific intent to convert the Debtor's assets by transferring

money belonging to the Debtor, to either the Individual Defendants, the Related Entities, the

Principal Entities, and any other parties.

35.     None of the Debtor's expenses outlined in the First and Second Orders were paid

despite the deposits of rents into the Debtor's bank accounts.

WHEREFORE, the Trustee requests that this Court enter a judgment in her favor and

against Thomas, finding that (a) Thomas converted the property described above and; (b)

directing that a judgment be rendered in the amount as may be established at trial, plus interest

from the date of each transfer at the maximum legal rate, and expenses of this action including,

9

without limitation attorneys' fees, costs, punitive damages, and;  (c) granting any additional

relief that is appropriate under the circumstances.

## COUNT III – BREACH OF FIDUCIARY DUTY BY THOMAS

36.    The Trustee incorporates the allegations of paragraphs 1 through 35 above as fully

set forth herein.

37.    The Debtor was insolvent during the time of the transfers described herein.

38.    Thomas owed a fiduciary duty of loyalty and good faith to the Debtor and the

Debtor's creditors.

39.    On information and belief, Thomas participated in a scheme whereby he transferred

the Debtor's assets, including those that were earmarked to be used to pay expenses outlined in

the First and Second Order, for his own benefit to pay expenses for other ventures such as the

Related Entities and the Principal Entities.

40.    By participating in this scheme Thomas attempted to obtain the right to own and

use the Debtor's assets free and clear of the claims of the Debtor's creditors.

41.    Thomas breached his fiduciary duties to the Debtor and the Debtor's creditors.

42.    As a proximate result of the breach of fiduciary duties described herein, the amount

the Debtor's creditors can collect from the Debtor was reduced.

WHEREFORE, the Trustee requests that this Court enter a judgment in her favor and

against Thomas; (a) entering a money judgment against Thomas as may be established at trial, plus

interest from the date of each transfer at the maximum legal rate, costs, and expenses of this action

including, without limitation attorneys' fees, costs, punitive damages, and; (b) granting any additional relief that is appropriate under the circumstances.

## COUNT IV – LARCENY, OR IN THE ALTERNATIVE, EMBEZZLEMENT BY THOMAS

43.     The Trustee incorporates the allegations of paragraphs 1 through 42 above as fully set forth herein.

44.     The misappropriations by Thomas were either unlawful at the onset and therefore a larceny, or in the alternative, took place unlawfully after the property was entrusted to the Debtor's care and therefore was an embezzlement.

45.     Thomas appropriated the Debtor's funds for his own benefit through fraudulent intent and deceit.

46.     The deposits of the resulting fraudulent transfers by the Debtor were only accessible to Thomas and Olswang.

47.     The fraudulent transfers described therein were made without explanation or purpose other than to benefit themselves exclusively.

48.      The entrustment of the assets of the Debtor under the control of Thomas was unlawful and was made with felonious intent at the time of the fraudulent transfers so as to constitute larceny, or in the alternative, the entrustment of the assets of the Debtor under the control of Thomas was lawful and therefore constituted embezzlement.

WHEREFORE, the Trustee requests that this Court enter a judgment in her favor and against Thomas, finding that (a) Thomas committed embezzlement, or in the alternative, larceny as described above and; (b) directing that a judgment be rendered in the amount as may be

11

established at trial, plus interest from the date of each transfer at the maximum legal rate, and

expenses of this action including, without limitation attorneys' fees, costs, punitive damages,

and; (c) granting any additional relief that is appropriate under the circumstances.

### COUNT V – AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT CONVEYANCES BY THOMAS- UNDER 11 U.S.C §§ 548, 550

49.    The Trustee incorporates the allegations of paragraphs 1 through 48 above as fully

set out herein.

50.    Thomas received transfers from the Debtor within two years prior to the Petition

Date.

51.    Within two years prior to the Debtor's Petition Date, according to the Debtor's

Statement of Financial Affairs ("SOFA"), the Debtor transferred a balance of at least

$330,300.00 of funds to Thomas.  Such transfers were made with intent to hinder, delay, and

defraud the Debtor's creditors.

52.    Thomas was the initial transferee of Debtor's assets as described above.

WHEREFORE, the Trustee requests that this Court enter a judgment against Thomas (a)

voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the

value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d)

punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and

just.

### COUNT VI – AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT CONVEYANCES BY THOMAS - UNDER 11 U.S.C §§ 548, 550

53.     The Trustee incorporates the allegations of paragraphs 1 through 52 above as fully set out herein.

54.     Thomas was one of the initial transferees of the payment described above and received immediate benefits from the Debtor within two years prior to the Petition Date.

55.     The Debtor did not receive reasonable value for the approximate $330,300.00 in transfers made to Thomas because it ultimately went to the sole benefit of himself.

56.     The Debtor was insolvent during all the transfers described herein.

57.     The Debtor was engaged in transactions described herein for which its remaining capital was always severely undercapitalized.

58.     Thomas caused the Debtor to incur debts that would be beyond the Debtor's ability to pay its debts.

59.     Each transfer to Thomas reduced the Debtor's assets, leaving less for the Debtor's creditors.

WHEREFORE, the Trustee requests that this Court enter a judgment against Thomas (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT VII - FRAUDULENT CONVEYANCE BY THOMAS – UNDER 740 ILCS 160/5(a)(1) AND 160/8

60.     The Trustee incorporates the allegations of paragraphs 1 through 59 above as fully set out herein.

61.     Section 5(a)(1) of the Illinois Uniform Fraudulent Transfers Act, 740 ILCS

§160/5(a)(1), provides in pertinent part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether
> the creditor's claim arose before or after the transfer was made or the obligation was
> incurred, if the debtor made the transfer or incurred the obligation:
>
> (1)  with actual intent to hinder, delay, or defraud any creditor of the debtor.

62.     Thomas authorized the Debtor to make transfers to the Related Entities, Principal

Entities, and directly to himself with the actual intent to hinder, delay, and defraud the Debtor

and the Debtor's creditors.

63.     Pursuant to Section 544(b) of the United States Bankruptcy Code, the trustee may

avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor

that is voidable under applicable law by a creditor and may recover the value of the transfers of

the Debtor's personal property pursuant to 740 ILCS §§ 160/5(a)(1),160/8, and Section 550 of

the Bankruptcy code.

WHEREFORE, the Trustee, requests this Court to enter a judgment against Thomas: (a)

voiding the transfers of the Debtor assets from its bank accounts pursuant to 740 ILCS

§160/5(a)(1); (b) returning the value of the property to the estate pursuant to 740 ILCS §160/8

and Section 550 of the Bankruptcy Code; (c) for the Trustee's costs and attorneys' fees of this

suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is

fair and just.


## COUNT VIII – FRAUDULENT CONVEYANCE BY THOMAS – UNDER 740 ILCS 160/5(a)(2) AND 160/8

64.     The Trustee incorporates the allegations of paragraphs 1 through 63 above as fully set out herein.

65.     Section 5(a)(2) of the Illinois Uniform Fraudulent Transfers Act, 740 ILCS § 160(5)(a)(2), provides in pertinent part:

> §5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or obligation was incurred, if the debtor made the transfer or incurred the obligation:
> …
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) was engaged or was about to engage in a business or a transaction for which remaining assets of the debtor was unreasonably small in relation to the business or transaction; or
>>>
>>> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they become due.

66.     Thomas authorized transfers of approximately $2.8 million dollars from Debtor's bank accounts which were made without the Debtor receiving reasonably equivalent value in exchange.

67.     Each transfer to the Debtor's transferees reduced the Debtor's assets, leaving less for the Debtor's creditors.

68.     Pursuant to Section 544(b) of the United States Bankruptcy Code, the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor and may recover the value of the transfers of the Debtor's personal property pursuant to 740 ILCS §§ 160/5(a)(2), 160/8, and Section 550 of the Bankruptcy code.

WHEREFORE, the Trustee, requests this Court to enter a judgment against Thomas: (a) voiding the transfers of the Debtor assets from its bank accounts pursuant to 740 ILCS §160/5(a)(2); (b) returning the value of the property to the estate pursuant to 740 ILCS §160/8 and Section 550 of the Bankruptcy Code; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT IX – CONVERSION BY OLSWANG

69.     The Trustee incorporates the allegations of paragraphs 1 through 68 above as fully set out herein.

70.     Olswang acted with specific intent to convert the Debtor's assets by transferring money belonging to the Debtor, to the Individual Defendants, the Related Entities, the Principal Entities, and any other parties.

71.     None of the Debtor's expenses outlined in the First and Second Orders were paid despite the deposits of rents into the Debtor's bank accounts.

WHEREFORE, the Trustee requests that this Court enter a judgment in her favor and against Olswang, finding that (a) Olswang converted the property described above and; (b) directing that a judgment be rendered in the amount as may be established at trial, plus interest from the date of each transfer at the maximum legal rate, and expenses of this action including, without limitation attorneys' fees, costs, punitive damages, and;  (c) granting any additional relief that is appropriate under the circumstances.

## COUNT X – BREACH OF FIDUCIARY DUTY BY OLSWANG

72.    The Trustee incorporates the allegations of paragraphs 1 through 71 above as fully set forth herein.

73.    The Debtor was insolvent during the time of the transfers described herein.

74.    Olswang owed a fiduciary duty of loyalty and good faith to the Debtor and the Debtor's creditors.

75.    On information and belief, Olswang participated in a scheme whereby they transferred the Debtor's assets, including those that were earmarked to be used to pay expenses outlined in the First and Second Order, for his own benefit to pay expenses for other ventures such as the Related Entities and the Principal Entities.

76.    By participating in this scheme Olswang attempted to obtain the right to own and use the Debtor's assets free and clear of the claims of the Debtor's creditors.

77.    Olswang breached his fiduciary duties to the Debtor and the Debtor's creditors.

78.    As a proximate result of the breach of fiduciary duties described herein, the amount the Debtor's creditors can collect from the Debtor was reduced.

WHEREFORE, the Trustee requests that this Court enter a judgment in her favor and against Olswang; (a) entering a money judgment against Olswang as may be established at trial, plus interest from the date of each transfer at the maximum legal rate, costs, and expenses of this action including, without limitation attorneys' fees, costs, punitive damages, and; (b) granting any additional relief that is appropriate under the circumstances.

### COUNT XI – LARCENY, OR IN THE ALTERNATIVE, EMBEZZLEMENT BY OLSWANG

79.    The Trustee incorporates the allegations of paragraphs 1 through 78 above as fully set forth herein.

80.    The misappropriations by Olswang were either unlawful at the onset and therefore a larceny, or in the alternative, took place unlawfully after the property was entrusted to the Debtor's care and therefore was an embezzlement.

81.    Olswang appropriated the Debtor's funds for his own benefit by fraudulent intent and deceit.

82.    The deposits of the resulting fraudulent transfers by the Debtor were only accessible to Olswang and Thomas.

83.    The fraudulent transfers described therein were made without explanation or purpose other than to benefit themselves exclusively.

84.    The entrustment of the assets of the Debtor under the control of Olswang was unlawful and was made with felonious intent at the time of the fraudulent transfers so as to constitute larceny, or in the alternative, the entrustment of the assets of the Debtor under the control of Olswang was lawful and therefore constituted embezzlement.

WHEREFORE, the Trustee requests that this Court enter a judgment in her favor and against Olswang, finding that (a) Olswang committed embezzlement, or in the alternative, larceny as described above and; (b) directing that a judgment be rendered in the amount as may be established at trial, plus interest from the date of each transfer at the maximum legal rate, and expenses of this action including, without limitation attorneys' fees, costs, punitive damages, and; (c) granting any additional relief that is appropriate under the circumstances.

## COUNT XII – AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT CONVEYANCES BY OLSWANG- UNDER 11 U.S.C §§ 548, 550

85.     The Trustee incorporates the allegations of paragraphs 1 through 84 above as fully set out herein.

86.     Olswang received transfers from the Debtor within two years prior to the Petition Date.

87.     According to the Debtor's SOFA, the Debtor transferred a total of at least $52,500.00 to Olswang with intent to hinder, delay, and defraud the Debtor's creditors which should be avoided.

88.     Olswang was the initial transferee of the Debtor's assets as described above.

WHEREFORE, the Trustee requests that this Court enter a judgment against Olswang (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XIII – AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT CONVEYANCES BY OLSWANG - UNDER 11 U.S.C §§ 548, 550

89.     The Trustee incorporates the allegations of paragraphs 1 through 88 above as fully set out herein.

90.     Olswang was one of the initial transferees of the payments described above and received immediate benefits from the Debtor within two years prior to the Petition Date.

91.     The Debtor did not receive reasonable value for the approximate $52,500.00 in transfers made to Olswang because it ultimately went to the sole benefit of himself and his partner Thomas.

92.     The Debtor was insolvent during the transfers described herein.

93.     The Debtor was engaged in transactions described herein for which its remaining capital was always severely undercapitalized.

94.     Olswang caused the Debtor to incur debts that would be beyond the Debtor's ability to pay its debts.

95.     Each transfer to Olswang reduced the Debtor's assets, leaving less for the Debtor's creditors.

WHEREFORE, the Trustee requests that this Court enter a judgment against Olswang (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; for the Trustee's costs and attorneys' fees of this suit; (c) for costs and punitive damages; and (d) for all such other and further relief in the Trustee's favor as is fair and just.

### COUNT XIV - FRAUDULENT CONVEYANCE BY OLSWANG – UNDER 740 ILCS 160/5(a)(1) AND 160/8

96.     The Trustee incorporates the allegations of paragraphs 1 through 95 above as fully set out herein.

97.     Section 5(a)(1) of the Illinois Uniform Fraudulent Transfers Act, 740 ILCS §160/5(a)(1), provides in pertinent part:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(2) with actual intent to hinder, delay, or defraud any creditor of the debtor.

98.     Olswang authorized the Debtor to make transfers to the Related Entities, Principal Entities, and directly to himself with the actual intent to hinder, delay, and defraud the Debtor and the Debtor's creditors.

99.     Pursuant to Section 544(b) of the United States Bankruptcy Code, the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor and may recover the value of the transfers of the Debtor's personal property pursuant to 740 ILCS §§ 160/5(a)(1), 160/8, and Section 550 of the Bankruptcy code.

WHEREFORE, the Trustee, requests this Court to enter a judgment against Olswang: (a) voiding the transfers of the Debtor assets from its bank accounts pursuant to 740 ILCS §160/5(a)(1); (b) returning the value of the property to the estate pursuant to 740 ILCS §160/8 and Section 550 of the Bankruptcy Code; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XV– FRAUDULENT CONVEYANCE BY OLSWANG – UNDER 740 ILCS 160/5(a)(2) AND 160/8

100.    The Trustee incorporates the allegations of paragraphs 1 through 99 above as fully set out herein.

101.    Olswang authorized transfers of approximately $2.8 million dollars from Debtor's bank accounts which were made without the Debtor receiving reasonably equivalent value in exchange.

102.    Each transfer to the Debtor's transferees reduced the Debtor's assets, leaving less for the Debtor's creditors.

103.    Pursuant to Section 544(b) of the United States Bankruptcy Code, the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor and may recover the value of the transfers of the Debtor's personal property pursuant to 740 ILCS §§ 160/5(a)(2), 160/8, and Section 550 of the Bankruptcy code.

WHEREFORE, the Trustee, requests this Court to enter a judgment against Olswang: (a) voiding the transfers of the Debtor assets from its bank accounts pursuant to 740 ILCS §160/5(a)(2); (b) returning the value of the property to the estate pursuant to 740 ILCS §160/8 and Section 550 of the Bankruptcy Code; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XVI – AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT CONVEYANCES BY MASTER LLC - UNDER 11 U.S.C §§ 548, 550

104.    The Trustee incorporates the allegations of paragraphs 1 through 103 above as fully set out herein.

105.    Section 548 of the United States Bankruptcy Code provides in pertinent part:

(a)(1) The Trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) Made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred…

106.    Of the Debtor's $2,727,898.15 in deposits made within two years prior to the Petition Date, the $2,000,000.00 was transferred to the Debtor's Related Entities, Principal Entities, Individual Defendants, or other parties.

107.    The Master LLC received a large portion of cash proceeds through electronic transfers and checks within two years prior to the Petition Date.

108.    The transfers made to the Master LLC were made with actual intent to hinder, delay, and defraud creditors of the Debtor.

109.    On information and belief, the Master LLC had at least eight bank accounts in its name as shown below.

| BANK | LAST FOUR DIGITS OF ACCOUNT |
|---|---|
| Fifth Third Bank | 5059 |
| Fifth Third Bank | 6448 |
| Fifth Third Bank | 6814 |
| Fifth Third Bank | 7497 |
| Fifth Third Bank | 7505 |
| Grand Ridge National Bank | 0247 |
| Inland Bank | 4996 |
| PNC Bank | 9808 |

110.    On information and belief, within two years prior to the Petition Date, the Individual Defendants caused the Debtor to transfer funds of approximately $1,819,903.96 to the Master LLC with intent to hinder, delay, and defraud the Debtor's creditors.

111.    The Master LLC was the initial transferee of the Debtor's assets transferred as described above.

112.    Section 550(a) of the United States Bankruptcy provides in pertinent part:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

113.    Pursuant to 11 U.S.C. § 550, the Trustee has the right to collect the value of the transfer(s) of the Debtor's property voided by the court pursuant to 11 U.S.C. § 548.

WHEREFORE, the Trustee requests that this Court enter a judgment against the Master LLC (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XVII – AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT CONVEYANCES BY MASTER LLC - UNDER 11 U.S.C §§ 548, 550

114.    The Trustee incorporates the allegations of paragraphs 1 through 113 above as fully set out herein.

115.    Section 548(a)(1)(B) of the United States Bankruptcy Code provides that a Trustee may avoid a transfer if the Debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for such transfer or obligation and was insolvent on the date of such transfer within two years prior to the Debtor's bankruptcy filing date.

116.    The Master LLC was the initial transferees of the payment described above and received immediate benefits from the Debtor within two years prior to the Petition Date.

117.    The Debtor did not receive reasonable value for the approximate 1,819,903.96 in transfers made to the Master LLC because it ultimately went to the sole benefit of the Individual Defendants.

118.    The Debtor was insolvent during the transfers described herein.

119.    The Debtor was engaged in transactions described herein for which its remaining capital was always severely undercapitalized.

120.    The Master LLC through the Individual Defendants intended to incur debts that would be beyond the Debtor's ability to pay.

121.    Each transfer to the Master LLC, as directed by the Individual Defendants, reduced the Debtor's assets, leaving less for the Debtor's creditors.

WHEREFORE, the Trustee requests that this Court enter a judgment against the Debtor's Master LLC (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

**COUNT XVIII – RECOVERY OF POST-PETITION TRANSFERS BY MASTER LLC–
UNDER 11 U.S.C. §§ 549 AND 550**

122.     The Trustee incorporates the allegations of paragraphs 1 through 121 above as fully set out herein.

123.     Pursuant to 11 U.S.C § 549, a Trustee may avoid a transfer of property of the estate if it occurred after the commencement of the case, and if it was not authorized by the Bankruptcy Court.

124.     Without authorization from the Bankruptcy Court, the Master LLC was the initial transferee and received direct transfers of at least $664,199.00 from the Debtor after the Petition Date.

WHEREFORE, the Trustee, requests this Court to enter a judgment against the Debtor's Master LLC: (a) avoiding the post-petition transfers of the Debtor's assets from its bank accounts pursuant to 11 U.S.C §§ 549 and 550; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; and; (d) punitive damages; (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XIX – AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT CONVEYANCES BY FREEDOM DEVELOPMENT GROUP LLC – NORTH AVENUE- UNDER 11 U.S.C §§ 548, 550

125.     The Trustee incorporates the allegations of paragraphs 1 through 124 above as fully set out herein.

126.     Freedom Development Group LLC – North Avenue received a large portion of cash proceeds through electronic transfers within 2 years prior to the Petition Date.

127.     Freedom Development Group LLC – North Avenue had at least two bank accounts in its name as shown below.

| BANK | LAST FOURT DIGITS |
|---|---|
| Grand Ridge National Bank | 0268 |
| Fifth Third Bank | 9530 |

128.    Within two years prior to the Petition Date, the Debtor transferred a balance of at least $173,660.33 to Freedom Development Group LLC – North Avenue with intent to hinder, delay, and defraud the Debtor's creditors.

129.    Freedom Development Group LLC – North Avenue was the initial transferee to Debtor's assets as described above.

WHEREFORE, the Trustee requests that this Court enter a judgment against the Freedom Development Group LLC – North Avenue (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

**COUNT XX – AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT CONVEYANCES BY FREEDOM DEVELOPMENT GROUP LLC – NORTH AVENUE - UNDER 11 U.S.C §§ 548, 550**

130.    The Trustee incorporates the allegations of paragraphs 1 through 129 above as fully set out herein.

131.    Freedom Development Group LLC – North Avenue was one of the initial transferees of the payment described above and received immediate benefits from the Debtor within two years prior to the Petition Date.

132.    The Debtor did not receive reasonable value for the approximate $173,660.33 in transfers made to Freedom Development Group LLC – North Avenue because it ultimately went to the sole benefit of the Individual Defendants.

134.    The Debtor was insolvent during the transfers described herein.

135.    The Debtor was engaged in transactions described herein for which its remaining capital was always severely undercapitalized.

136.    Freedom Development Group LLC – North Avenue as directed by the Individual Defendants intended to incur debts that would be beyond the Debtor's ability to pay its debts.

137.    Each transfer to Freedom Development Group LLC – North Avenue reduced the Debtor's assets, leaving less for the Debtor's creditors.

WHEREFORE, the Trustee requests that this Court enter a judgment against Freedom Development Group LLC – North Avenue (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXI – AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT CONVEYANCES BY JOHN DOE WITH BANK ACCOUNT ENDING IN 8781- UNDER 11 U.S.C §§ 548, 550

138.    The Trustee incorporates the allegations of paragraphs 1 through 137 above as fully set out herein.

139.    The bank accounts numbers ending in 8781, 9332, and 0147 are either associated with the Related Entities or the Principal Entities.

28

140.    On information and belief, within two years prior to the Petition Date, the Debtor transferred at least $24,691.60 to John Doe, bank account with last four digits 8781, with intent to hinder, delay, and defraud the Debtor's creditors that should be avoided.

141.    The transfers from the Debtor to bank account ending in 8781 are not able to be better identified by the Trustee because the Defendants are in exclusive possession of the information necessary to do so and have failed and refused to disclose that information.

142.    John Doe with bank account number ending in 8781 was the initial transferee to Debtor's assets transferred as described above.

WHEREFORE, the Trustee requests that this Court enter a judgment against the John Doe with bank account ending in 8781 (a) avoiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXII – AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT CONVEYANCES BY JOHN DOE WITH BANK ACCOUNT ENDING IN 8781 - UNDER 11 U.S.C §§ 548, 550

143.    The Trustee incorporates the allegations of paragraphs 1 through 142 above as fully set out herein.

144.    John Doe with bank account number ending in 8781 was one of the initial transferees of the payments described above and received immediate benefits from the Debtor within two years prior to the Petition Date.

145.   The Debtor did not receive reasonable value for the approximate $24,691.60 in transfers made to John Doe with bank account ending in 8781 because it ultimately went to the sole benefit of the Individual Defendants.

146.   The Debtor was insolvent during the transfers described herein.

147.   The Debtor was engaged in transactions described herein for which its remaining capital was always severely undercapitalized.

148.   John Doe with bank account ending in 8781 caused the Debtor to incur debts that would be beyond the Debtor's ability to pay its debts.

149.   Each transfer to John Doe with bank account ending in 8781 reduced the Debtor's assets, leaving less for the Debtor's creditors.

WHEREFORE, the Trustee requests that this Court enter a judgment against John Doe with bank account ending in 8781 (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXIII – AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT CONVEYANCES BY JOHN DOE WITH BANK ACCOUNT ENDING IN 9332- UNDER 11 U.S.C §§ 548, 550

150.   The Trustee incorporates the allegations of paragraphs 1 through 149 above as fully set out herein.

151.   On information and belief, within two years prior to the Petition Date, the Debtor transferred at least $259,349.15 to John Doe, bank account with last four digits 9332, with intent to hinder, delay, and defraud the Debtor's creditors that should be avoided.

152.    The transfers from the Debtor to bank accounts 9332 are not able to be better
identified by the Trustee because the Defendants are in exclusive possession of the information
necessary to do so and have failed and refused to disclose that information.

153.    John Doe with bank account number ending in 9332 was the initial transferee of
the Debtor's assets as described above.

WHEREFORE, the Trustee requests that this Court enter a judgment against the John
Doe with bank account ending in 9332 (a) voiding the transfers of the Debtor's property pursuant
to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs
and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief
in the Trustee's favor as is fair and just.

## COUNT XXIV – AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT CONVEYANCES BY JOHN DOE WITH BANK ACCOUNT ENDING IN 9332 - UNDER 11 U.S.C §§ 548, 550

154.    The Trustee incorporates the allegations of paragraphs 1 through 153 above as
fully set out herein.

155.    John Doe with bank account number ending in 9332 was one of the initial
transferees of the payments described above and received immediate benefits from the Debtor
within two years prior to the Petition Date.

156.    The Debtor did not receive reasonable value for the approximate $259,349.15 in
transfers made to John Doe with bank account ending in 9332 because it ultimately went to the
sole benefit of the Individual Defendants.

157.    The Debtor was insolvent during the transfers described herein.

158.    The Debtor was engaged in transactions described herein for which its remaining
capital was always severely undercapitalized.

31

159.    John Doe with bank account ending in 9332 through the Individual Defendants caused the Debtor to incur debts that would be beyond the Debtor's ability to pay its debts.

160.    Each transfer to John Doe with bank account ending in 9332 reduced the Debtor's assets, leaving less for the Debtor's creditors.

WHEREFORE, the Trustee requests that this Court enter a judgment against John Doe with bank account ending in 9332 (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXV – AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT CONVEYANCES BY JOHN DOE WITH BANK ACCOUNT ENDING IN 1473- UNDER 11 U.S.C §§ 548, 550

161.    The Trustee incorporates the allegations of paragraphs 1 through 160 above as fully set out herein.

162.    Within two years prior to the Petition Date, the Debtor transferred at least $195,614.00 to John Doe, bank account with last four digits 1473, with intent to hinder, delay, and defraud the Debtor's creditors that should be avoided.

163.    The transfers from the Debtor to bank account 1473 are not able to be better identified by the Trustee because the Defendants are in exclusive possession of the information necessary to do so and have failed and refused to disclose that information.

164.    John Doe with bank account number ending in 1473 was the initial transferee of the Debtor's assets as described above.

32

WHEREFORE, the Trustee requests that this Court enter a judgment against the John Doe with bank account ending in 1473 (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

### COUNT XXVI – AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT CONVEYANCES BY JOHN DOE WITH BANK ACCOUNT ENDING IN 1473 - UNDER 11 U.S.C §§ 548, 550

165.    The Trustee incorporates the allegations of paragraphs 1 through 164 above as fully set out herein.

166.    John Doe with bank account number ending in 1473 was one of the initial transferees of the payments described above and received immediate benefits from the Debtor within two years prior to the Petition Date.

167.    The Debtor did not receive reasonable value for the approximate $195,614.00 in transfers made to John Doe with bank account ending in 1473 because it ultimately went to the sole benefit of the Individual Defendants.

168.    The Debtor was insolvent during the transfers described herein.

169.    The Debtor was engaged in transactions described herein for which its remaining capital was always severely undercapitalized.

170.    John Doe with bank account ending in 1473 through the Individual Defendants caused the Debtor to incur debts that would be beyond the Debtor's ability to pay its debts.

171.    Each transfer to John Doe with bank account ending in 1473 reduced the Debtor's assets, leaving less for the Debtor's creditors.

WHEREFORE, the Trustee requests that this Court enter a judgment against John Doe with bank account ending in 1473 (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

### COUNT XXVII – AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT CONVEYANCES BY PRINCIPAL ENTITIES AND DUMMY OR SHAM CORPORATIONS CREATED OR USED BY, OR FOR THE BENEFIT OF THE INDIVIDUAL DEFENDANTS - UNDER 11 U.S.C §§ 544, 548, 550

172.    The Trustee incorporates the allegations of paragraphs 1 through 171 above as fully set out herein.

173.    Once the Debtor caused funds to be transferred to the Master LLC, upon receipt of those funds the Master LLC would transfer those funds to the Principal Entities.  During the period of 2019 and 2020 the Master LLC's main Grand Ridge Bank account had received deposits in its account in the amount of $4,975,691.12, (roughly $2,000,000.00 of which is directly traceable from the Debtor).  Substantial amounts were transferred to the Related Entities, the Principals' Entities, numerous grocery wholesaler vendors, and over $600,000.00 to various law firms.

174.    A majority of the $2,000,00.00 fraudulently transferred was diverted to 901 Center Street Holdings LLC, and JET Foods entities with intent to hinder, delay, and defraud the Debtor's creditors which should be avoided.

175.    The Principal Entities were the mediate transferees of the of Debtor's assets as described above.

WHEREFORE, the Trustee requests that this Court enter a judgment against the Debtor's Principal Entities or any dummy or sham corporations created or used by, or for the benefit of the Individual Defendants (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXVIII – AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT CONVEYANCES BY PRINCIPAL ENTITIES AND OTHER DUMMY OR SHAM CORPORATIONS CREATED OR USED BY, OR FOR THE BENEFIT OF THE INDIVIDUAL DEFENDANTS - UNDER 11 U.S.C §§ 548, 550

176.    The Trustee incorporates the allegations of paragraphs 1 through 175 above as fully set out herein.

177.    The Principal Entities including 901 Center Street Holdings and JET Foods LLC, as well as other dummy or sham corporations created or used by, or for the benefit of the Individual Defendants were initial transferees of the payment described above and received immediate benefits from the Debtor within two years prior to the Petition Date.

178.    The Debtor did not receive reasonable value for the approximate $2,000,00.00 in transfers made to the Principal Entities because it ultimately went to the sole benefit of the Individual Defendants.

179.    The Debtor was insolvent during the transfers described herein.

180.    The Debtor was engaged in transactions described herein for which its remaining capital was always severely undercapitalized.

181.    The Principal Entities, through the Individual Defendants caused the Debtor to incur debts that would be beyond the Debtor's ability to pay its debts.

182.    Each transfer to the Principal Entities reduced the Debtor's assets, leaving less for the Debtor's creditors.

WHEREFORE, the Trustee requests that this Court enter a judgment against the Principal Entities as well as other dummy or sham corporation created or used by, or for the benefit of the Individual Defendants (a) voiding the transfers of the Debtor's property pursuant to 11 U.S.C. § 548; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXIX – RECOVERY OF POST-PETITION TRANSFERS BY PRINCIPAL ENTITIES AND OTHER DUMMY OR SHAM CORPORATION CREATED OR USED BY, OR FOR THE BENEFIT OF THE INDIVIDUAL DEFENDANTS – UNDER 11 U.S.C. §§ 549 AND 550

183.    The Trustee incorporates the allegations of paragraphs 1 through 182 above as fully set out herein.

184.    After the Petition Date, the Master LLC transferred approximately $2,000,000.00 to the Debtor's other Principal Entities including 901 Center Street Holdings and JET Foods LLC post-petition.   The source of these funds are directly traceable to the Debtor's bank accounts.

185.    The transfers made from the Debtor to the Principal Entities constituted post-petition transfers avoidable under 11 U.S.C. § 549 of the Bankruptcy Code.

186.   Pursuant to 11 U.S.C § 550, the Trustee may recover for the benefit of the estate the property transferred from the mediate transferees.

WHEREFORE, the Trustee, requests this Court to enter a judgment against the Debtor's Principal Entities: (a) avoiding the post-petition transfers of the Debtor's assets from its bank accounts pursuant to 11 U.S.C §§ 549 and 550; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and; (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXX – RECOVERY OF POST-PETITION TRANSFERS BY JOHN DOE WITH BANK ACCOUNT ENDING IN 0253– UNDER 11 U.S.C. §§ 549 AND 550

187.   The Trustee incorporates the allegations of paragraphs 1 through 186 above as fully set out herein.

188.   Without authorization from the Bankruptcy Court, unknown bank accounts with account number ending in 0253, received direct transfers of at least $1,500.00 from the Debtor after the Petition Date. On information and belief, the Trustee believes that these accounts are either associated with the Related Entities, Principal Entities, or Individual Defendants.

189.   The transfers from the Debtor to bank account 0253 are not able to be better identified by the Trustee because the Defendants are in exclusive possession of the information necessary to do so and have failed and refused to disclose that information.

WHEREFORE, the Trustee, requests this Court to enter a judgment against John Doe with bank account ending in 0253 (a) avoiding the post-petition transfers of the Debtor's assets from its bank accounts pursuant to 11 U.S.C §§ 549 and 550; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages and; (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXXI – RECOVERY OF POST-PETITION TRANSFERS BY JOHN DOE WITH BANK ACCOUNT ENDING IN 0262– UNDER 11 U.S.C. §§ 549 AND 550

190.    The Trustee incorporates the allegations of paragraphs 1 through 189 above as fully set out herein.

191.    Without authorization from the Bankruptcy Court, unknown bank accounts with account number ending in 0262, received direct transfers of at least $39,000.00 from the Debtor after the Petition Date. On information and belief, the Trustee believes that this account is either associated with the Related Entities, Principal Entities, or Individual Defendants.

192.    The transfers from the Debtor to bank account 0262 is not able to be better identified by the Trustee because the Defendants are in exclusive possession of the information necessary to do so and have failed and refused to disclose that information.

WHEREFORE, the Trustee, requests this Court to enter a judgment against John Doe with bank account ending in 0262: (a) avoiding the post-petition transfers of the Debtor's assets from its bank accounts pursuant to 11 U.S.C §§ 549 and 550; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and; (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXXII – RECOVERY OF POST-PETITION TRANSFERS BY JOHN DOE WITH BANK ACCOUNT ENDING IN 0280– UNDER 11 U.S.C. §§ 549 AND 550

193.    The Trustee incorporates the allegations of paragraphs 1 through 192 above as fully set out herein.

194.    Without authorization from the Bankruptcy Court, unknown bank account with account numbers ending in 0280, received direct transfers of at least $38,000.00 from the Debtor

after the Petition Date. On information and belief, the Trustee believes that this account is either associated with the Related Entities, Principal Entities, or Individual Defendants.

195.    The transfers from the Debtor to bank account 0280 is not able to be better identified by the Trustee because the Defendants are in exclusive possession of the information necessary to do so and have failed and refused to disclose that information.

WHEREFORE, the Trustee, requests this Court to enter a judgment against John Doe with bank account ending in 0280: (a) avoiding the post-petition transfers of the Debtor's assets from its bank accounts pursuant to 11 U.S.C §§ 549 and 550; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXXIII – RECOVERY OF POST-PETITION TRANSFERS BY JOHN DOE WITH BANK ACCOUNT ENDING IN 0412– UNDER 11 U.S.C. §§ 549 AND 550

196.    The Trustee incorporates the allegations of paragraphs 1 through 195 above as fully set out herein.

197.    Without authorization from the Bankruptcy Court, unknown bank account with account number ending in 0412, received direct transfers of at least $28,000.00 from the Debtor after the Petition Date. On information and belief, the Trustee believes that this account is either associated with the Related Entities, Principal Entities, or Individual Defendants.

198.    The transfers from the Debtor to bank accounts 0412 are not able to be better identified by the Trustee because the Defendants are in exclusive possession of the information necessary to do so and have failed and refused to disclose that information.

WHEREFORE, the Trustee, requests this Court to enter a judgment against John Doe with bank account ending in 0412: (a) avoiding the post-petition transfers of the Debtor's assets from its bank accounts pursuant to 11 U.S.C §§ 549 and 550; (b) returning the value of the property to the estate; (c) for the Trustee's costs and attorneys' fees of this suit; (d) punitive damages; and; (e) for all such other and further relief in the Trustee's favor as is fair and just.

## COUNT XXXIV – ALTER EGO/PIERCING CORPORATE VEIL AGAINST THE DEBTOR'S RELATED ENTITIES, INDIVIDUAL DEFENDANTS, AND PRINCIPAL ENTITIES

199.    The Trustee incorporates the allegations of paragraphs 1 through 198 above as fully set out herein.

200.    At all times relevant hereto, the Individual Defendants, through their common ownership of the Debtor, its Related Entities and Principal Entities, dominated the Debtor's actions and interfered and supplanted the Debtor's corporate governance.

201.    The Individual Defendants' domination and control over the Debtor resulted in reckless and self-dealing transactions whereby the Related Entities and the Principal Entities, they personally owned and controlled, extracted value from the Debtor to the detriment of the Debtor's non-insider creditors.

202.    None of the officers of the Debtor, the Individual Defendants, acted independently in the interests of the Debtor. Commingling of millions of dollars occurred between the Debtor and the Debtor's Related Entities and Principals' Entities.  The Debtor was severely undercapitalized during the two years prior to the Petition Date due to fraudulent transfers made to the Individual Defendants, Related Entities, and Principal Entities.

203.    At all relevant times, the Debtor acted as a "cash cow" for purposes of supporting the Individual Defendants, the Related Entities, and the Principals' Entities.

204.    The Individual Defendants failed to maintain and respect the Related Entities and Principal Entities as separate corporate entities.  Among other things, when convenient to them, the Individual Defendants failed to cause the Debtor to use its revenue it gained from rent collections to pay the Debtor's expenses identified in the First and Second Orders.

205.    The Individual Defendant's domination and control over the Debtor resulted in fraud or inequality to the Debtor's non-insider creditors and resulted in damage to the Debtor's non-insider creditors.

206.    The Individual Defendants so dominated and controlled the Debtor, the Principal Entities, and Related Entities that those parties were mere instrumentalities of the Individual Defendants.  Furthermore, the assets of all the Defendants should be determined to be property of the estate pursuant to Section 541 of the Bankruptcy Code, or in the alternative to be held in a constructive trust for the benefit of the Debtor.

207.    Respecting the corporate form of the Debtor and the Defendants by treating them as entities separate and apart from each other would promote injustice, inequality, and fraud with respect to the Debtor and its estate.

WHEREFORE, the Trustee, requests that the Court, enter a judgment; (a) finding that all the Defendants are alter egos to the Debtor and mere instrumentalities of the Individual Defendants, and that equity requires the corporate veil to be pierced; (b) piercing the corporate veil of all Defendants, finding that all the Defendants are liable for all the debts of the Debtor; (c) finding the assets of all the Defendants to be property of the estate pursuant to Section 541 of the

Bankruptcy Code or subject to a constructive trust, for the benefit of the Debtor and its estate; (d)

granting such other equitable relief as may be just and appropriate

### COUNT XXXV – PERMANENT INJUNCTIVE RELIEF – UNDER 11 U.S.C. § 105

208.    The Trustee incorporates the allegations of paragraphs 1 through 207 above as

fully set out herein.

209.    Pursuant to Section 105(a) of the Bankruptcy Code, the Trustee seeks a

permanent injunction against all the Defendants from transferring, liquidating, converting,

encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending,

withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any

assets.

210.    Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order,

process of judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).

211.    Relief under Section 105(a) of the Bankruptcy Code is particularly appropriate in

a Chapter 7 case when necessary to protect the property of the Debtor's estate.

212.    For the reasons stated herein, this Court should apply Section 105 of the

Bankruptcy Code to permanently enjoin all the Defendants from transferring, liquidating,

converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing,

assigning, spending, withdrawing, granting a lien or security interest or other interest in, or

otherwise disposing of any assets because such continuing efforts will jeopardize the property of

the Debtor's estate and interfere with the Debtor's creditors' ability to collect from the Debtor.

213.    There is a substantial likelihood irreparable harm in the absence of injunctive relief, because all the Defendants have engaged and are likely to continue to engage in fraudulent activity to the detriment of the Debtor's estate, based upon the facts alleged including the Individual Defendants invocation of the Fifth Amendment.

214.    The damage to the Debtor far outweighs any damage that would be inflicted on all the Defendants if an injunction is entered.

215.    The permanent injunctive relief sought will serve the public interest by protecting the Debtor's estate and promote fairness by halting fraudulent activity.

WHEREFORE, the Trustee, requests that the Court, enter an order, (a) permanently enjoining all the Defendants from transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any assets because such continuing efforts will jeopardize the property of the Debtor's estate and interfere with the Debtor's creditor's ability to collect from the Debtor's estate, pursuant to Section 105(a) of the Bankruptcy Code and; (b) granting such other and further relief as may be just and equitable.

Respectfully Submitted,

Karen R. Goodman, not individually, but solely in her capacity as Chapter 7 Trustee for the estate of Freedom Development Group LLC – 87th Street.,
     Plaintiff,

By: /s/Jacob Comrov
     One of her attorneys

**Trustee's Counsel**:
Karen R. Goodman, Esq. (Atty. No. 1008242)

Jacob D. Comrov, Esq. (Atty. No. 06326738)
Crane, Simon, Clar & Goodman
135 S. LaSalle Street, Suite 3950
Chicago, IL 60603
312-641-6777